UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.                                   )
                                                   )
TERI FAHRENBRUCH, a Colorado resident,             )
                                                   )
Plaintiff,                                         )
                                                   )   Case No: 21-354
v.                                                 )
                                                   )
CROSSROADS COMMUNITY CHURCH, Inc                   )
a Colorado Nonprofit Corporation.                  )
                                                   )
Defendant.                                         )

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff, Teri Fahrenbruch, ("Ms. Fahrenbruch" or "Plaintiff"), by and through counsel, states the following as her Complaint and Jury Demand ("Complaint") against Defendant Crossroads Community Church ("Crossroads" or "Defendant").

**NATURE OF THE ACTION**

1. This is an action for employment discrimination and retaliation perpetrated by Crossroads against Ms. Fahrenbruch on the basis of her gender. During Ms. Fahrenbruch's tenure with Crossroads, she was subjected to a course of severe and pervasive bullying, harassment and discrimination because of her gender . In response, Ms. Fahrenbruch filed a Charge for Discrimination with the Colorado Civil Rights Division and the Equal Employment Opportunity Commission. Crossroads, undeterred by Ms. Fahrenbruch's opposition to discrimination, continued its campaign of unlawful harassment against her, culminating in Ms. Fahrenbruch's termination from employment, a mere three (3) weeks after she exercised her lawful rights. Ms. Fahrenbruch accordingly brings these discrimination and

retaliation claims against Crossroads pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq ("Title VII").

## PARTIES

2. Plaintiff, Teri Fahrenbruch, is and at all times relevant to the Complaint is a Colorado resident.

3. Defendant, Crossroads Community Church, Inc., is a nonprofit corporation located in Parker, Colorado.

4. From July of 2013 until August of 2019, Ms. Fahrenbruch was employed with Defendant in two (2) positions. From 2013-2015, Ms. Fahrenbruch was the Finance Administrator. In May of 2015, she was promoted to Director of Finance and was terminated in September of 2019.

5. Each of these positions were secular in nature. Ms. Fahrenbruch did not engage in any ministerial duties at any point in her tenure with the Defendant.

## JURISDICTION & VENUE

6. Plaintiff incorporates by reference the above paragraphs as set forth herein.

7. Plaintiff brings this action under Title VV of the Civil Rights Act of 1964, as amended 42 U.S.C. §§2000e, et seq,. Plaintiff additionally raises other employment related claims under state common law.

8. This Court has jurisdiction over this action under 28 U.S.C. § 1331 because it arises under the laws of the United States. (*See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*) This Court also has supplemental jurisdiction over Plaintiff's state laws claims under 28 U.S.C. §1367, as such claims arise out of the same case or controversy as Plaintiff's Title VII claims.

9. Jurisdiction is also proper under 28 U.S.C §§1332(a)(1), in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10. This action is timely because Ms. Fahrenbruch was terminated from Crossroads in October of 2019; and Ms. Fahrenbruch filed charges of discrimination and retaliation with the Equal Employment Opportunity Commission (the "EEOC"), September 5, 2019.

11. The EEOC issued a Notice of Dismissal and Right to Sue letter to Ms. Fahrenbruch on November 6, 2020, and this action has been filed within ninety days of that date.

12. All conditions precedent to filing and maintaining this action have been met.

13. Venue in Title VII cases is determined by 42 U.S.C. § 2000e–5(f)(3), *see Pierce v. Shorty Small's of Branson Inc.*, 137 F.3d 1190, 1191 (10th Cir. 1998). Venue is proper in Colorado under 42 U.S.C. § 2000e–5(f)(3) because the unlawful employment practices are alleged to have been committed in this district; and because the aggrieved person, Ms. Fahrenbruch, who lived and worked in Colorado, and would have continued to work for Crossroads in this district but for the unlawful employment practices by Crossroads.

## FACTUAL ALLEGATIONS

14. Ms. Fahrenbruch incorporates by reference the above paragraphs as though set forth separately herein.

15. Crossroads hired Ms. Fahrenbruch as the Finance Administrator in 2013. In this position Ms. Fahrenbruch received glowing reviews. Based on her exemplary performance, Ms. Fahrenbruch was promoted by Crossroads to Director of Finance in May of 2015.

16. At all relevant times during her employment, Ms. Fahrenbruch performed her job duties satisfactorily or better. She received promotions, salary increases, and high performance reviews.

17. At all times relevant to this action, Crossroad's Executive Team was comprised entirely of males and classified as pastors.

18. Prior to Ms. Fahrenbruch's termination, her direct supervisor was Pastor Chris Robinson ("Robinson"), a member of the Crossroads Executive Team, Head of Human Resources and defacto Compliance Officer.

19. Beginning in or about December 2017, Ms. Fahrenbruch was subjected to unwelcome and offensive treatment and comments by Robinson and other members, all of which are male, of the Executive Team.

20. In or about February of 2018, Robinson verbally "oinked" like a pig at Plaintiff and other female employees while in line to eat lunch. Following this incident, Ms. Fahrenbruch and other female employees requested a meeting with John Snyder ("Snyder"), Executive Pastor and member of Crossroads Executive Team, and Dave Palmer ("Palmer"), who is also a pastor. Ms. Fahrenbruch reported and objected to Robinson's offensive behavior on behalf of herself and the other female employees.

21. The Executive Team failed to investigate this complaint or implement any meaningful remedial actions.

22. As a result, offensive and unwelcome behavior towards Ms. Fahrenbruch and other female employees escalated. Robinson harassed, screamed, threatened, made fun of her in private as well as openly in front of colleagues and other third parties including a representative from a lending institution.

23. Armed with the knowledge that there would be no consequence for unlawful behavior, the harassment, unfair treatment, and bullying, extended past Robinson.

24. In March of 2019 Pastor John Snyder ("Snyder"), the Executive Pastor of Ministries, sent a series of emails to Ms. Fahrenbruch regarding Joshua Clemons ("Clemons"). Clemons was an ex-pastor who was convicted of sexual crimes against minor females. At the time of the e-mails, Clemons was serving his prison sentence.

25. The emails contained letters that Snyder was sending to Clemons. This made Ms. Fahrenbruch extremely uncomfortable, as she had children in the youth ministry program in which Clemons was formerly employed. Moreover, Ms. Fahrenbruch also knew at least one of the victims personally.

26. Snyder sent these letters to Ms. Fahrenbruch in an effort to intimidate and target her because she was a woman. *Please see attached hereto and incorporated herein as* **Exhibit 1**.

27. Upon information and belief, Snyder was approached by a number of individuals regarding Clemons' behavior towards female minors while in his official capacity. However, when Clemons terminated his employment with Crossroads, he was afforded a severance package.[1]

28. On April 10, 2019, Chris Howe ("Howe"), another male member of the Crossroads Executive Team, screamed at Ms. Fahrenbruch while pointing his finger down to her while she was sitting on a low couch, with his mid-section at her eye level. Howe has repeatedly made Ms. Fahrenbruch cower in his presence. To the Plaintiff's knowledge and belief, Howe did not treat male employees this way. She reported this incident to Snyder and followed up to Howe and others in written correspondence.

---

[1] He was not criminally charged until months after his employment terminated.

29. In May 2019, Palmer demanded Ms. Fahrenbruch pay an invoice, which protocol dictates requires a W-9. When Ms. Fahrenbruch stated that she needed a W-9, the pastor told her that she was wrong and demanded that she pay the invoice without documentation. Ms. Fahrenbruch was treated this way due to the fact she was a woman as it was only after this pastor spoke to another male did he then comply with providing the documentation Ms. Fahrenbruch requested.   If Ms. Fahrenbruch was treated differently because she is a female.

30. In May 2019 Robinson made a sexual/inappropriate comment about Ms. Fahrenbruch to Rod Randol of Cass Community Bank, the lending institution that was financing the construction of Defendant's building in front of her. In the months that followed, the Cass Community Bank employee was told by Robinson to not talk with Ms. Fahrenbruch as "she is suing us."

31. In June 2019, Ms. Fahrenbruch and Jennie Bescham, another female employee who, upon information and belief, was subsequently forced to resign, requested a meeting with members of the Executive Team to discuss a minority female employee who was forced to resign. Ms. Fahrenbruch stated her concern that yet another female[2] employee had left Crossroads. Palmer "there are two sides to every story" and "there was a language barrier and so she just did not understand" (she was Filipino).   Later that day, Pastor Mark Haug ("Haug"), a member of the Executive Team, came to Ms. Fahrenbruch's office and stated in an apparent demeaning manner, "you better watch your words."

---

[2] The female employee was harassed by Robinson throughout her tenure, was told she had to use her own money to provide gift cards for volunteers (male counterpart in same position paid for the gift cards he provided to his volunteers through the Defendant's budget), she had to purchase laptops out of her own personal money for herself and her admin (male counterpart was afforded computers from the Defendant's budget).

6

32. As a result, Ms. Fahrenbruch and another female employee requested a meeting with Snyder and Palmer to discuss their concerns over the way females were treated at Crossroads.

33. On June 18, 2019, this meeting occurred and during that time, Ms. Fahrenbruch and another female employee, were not permitted to effectively communicate their concerns. Ms. Fahrenbruch was told to "stay in your lane." Thus, she responded to the male supervisors "I feel I am next."

34. Three days later, Ms. Fahrenbruch was out on medical leave for a major surgery stemming from her previous battle with cancer. The evening before she returned to work, Snyder called her and informed her that she was going to be placed on a Performance Improvement Plan ("PIP"). She returned to work on July 15, 2019, and on that day, which was four (4) workdays from her last interaction with management, she was placed in fact on a ("PIP").

35. The Performance Improvement Plan was pre-text for discrimination and retaliation. The PIP was not actionable, measurable, and simply failed to meet the threshold of such document. It was, in fact, intended to punish Ms. Fahrenbruch without any basis in her performance. The PIP stated:

    a. That if Ms. Fahrenbruch requested documentation, followed up with a staff member regarding an expense, or inquiries about a budget code, she would be written up. However, verifying expense reports and spending was a key responsibility of her job as the Director of Finance, as stipulated in her job description.

    b. That Ms. Fahrenbruch was also not permitted to inquire about sick, vacation, or personal time. However, managing and maintaining payroll

was integral to her regular job duties. It was imperative that if an employee does not log sick, vacation, time off, or the like for Ms. Fahrenbruch to inquire so that she can complete payroll with the correct information in the system. However, Ms. Fahrenbruch was instructed not to ask about time sheets, if individuals are out of the office, and unaccounted for time-off request forms as it is "none of her business." If Ms. Fahrenbruch inquired, she would be written up and possibly terminated.

36. Ms. Fahrenbruch's position as Director of Finance required her to sign off on all payments to vendors and payroll. Not being able to ask questions regarding missing paperwork, excessive spending on a particular item[3], and not having completed payroll time sheets would impede the satisfactory performance of her job.

37. Without her being able to ask the types of questions listed above, Defendant sabotaged Ms. Fahrenbruch's work.

38. In July of 2019, Ms. Fahrenbruch requested a mentor regarding her PIP, but Palmer and Robinson declined to fulfill said request. However, Palmer and Robinson afforded a similarly situated male employee a mentor when he was put on a PIP a few months prior. Because of Ms. Fahrenbruch's status as a female employee, she was not afforded the same opportunity.

39. The PIP was pre-textual in nature and intended for Plaintiff to fail.

40. Feeling her discrimination complaints were not being heard, even though she was following the protocol of the Staff Handbook, in July of 2020 Ms. Fahrenbruch retained

---

[3] i.e. spending $400 on a guinea pig, which was given away two months later

counsel. Through counsel, she submitted a formal complaint to the Crossroads Executive Team and also the Crossroads Leadership Committee.

41. Snyder then reached out to a Crossroads community member, Bud Fisher, regarding Ms. Fahrenbruch. Snyder shared confidential information regarding Ms. Fahrenbruch's employment and that she retained legal counsel due to her discrimination claims. This community member then contacted Ms. Fahrenbruch, as well as other community members, to discuss the claims.

42. On August 18, 2019, during Snyder's sermon, he openly told the entire congregation about concerns by female employees regarding being treated unfairly due to gender, and stated that the situation was a "simple disagreement and mere gossip." This "family meeting" with the entire congregation, as Snyder referred to it, was filmed and placed on Defendant's website.

43. Out of 34 employees, per the July 8, 2019 Staff Flow Chart, half of which are women, nine (9) females were terminated and/or resigned in 2019 which is more than 50% of the females on staff. Upon information and belief, none of whom received severance packages even though it was customary for similarly situated male employees to receive said severance packages; including male employees which were placed on a PIP and subsequently terminated.

44. Ms. Fahrenbruch was also not afforded the same "comp time" policy as male colleagues and when she inquired, Robinson sent an email to her stating the same.

45. On August 26, 2019, Ms. Fahrenbruch was instructed by Palmer to pay a male employee through payroll for a time period that he was not actually employed by Crossroads. Ms. Fahrenbruch questioned this payment coming in the payroll period for 2/19-4/19, when this

individual was not actually hired until May 11, 2019. *Please see attached hereto and incorporated herein as* **Exhibit 2.** Palmer, instead of praising Ms. Fahrenbruch for catching the error and not falsifying documentation, instead deemed this insubordination.

46. Ms. Fahrenbruch was also instructed in September of 2019 to change the code on the safe so that she had exclusive knowledge of the code, which is **contrary to** industry standard. She explained that she did not feel comfortable doing so and declined.

47. Defendant again told her that she was being insubordinate.

48. These perpetual behaviors created a passive and complicit work environment of sexism, misogyny, and dysfunction, normalized and glossed over by male Executive Team members of Defendant.

49. As a result of Defendant's continued actions, Ms. Fahrenbruch filed a Charge for Discrimination with Colorado Civil Rights Division and Equal Employment Opportunity Commission on September 5, 2019.

50. On September 30, 2019, less than three weeks after she filed the Charge for Discrimination, Ms. Fahrenbruch was terminated from her employment.

51. Ms. Fahrenbruch was terminated in retaliation for engaging in protected activity, which included but was not limited to the September 5, 2019 Charge of Discrimination.

52. Ms. Fahrenbruch's termination violated Defendant's internal policies and procedures as outlined in the Crossroads Staff Handbook. *Please see attached hereto and incorporated herein as* **Exhibit 3.**

53. Ms. Fahrenbruch followed the protocols under Section C- Equal Employment Opportunity (page 11) of the Crossroads Staff Handbook in which it states:

> " …We prohibit unlawful discrimination against applicants or employees on the basis of age 40 or over, race, sex, color, national origin, disability, military status, genetic information, or any other status protected by applicable state or local law. This prohibition includes unlawful harassment based on any of these protected classes. Unlawful harassment includes verbal or physical conduct which has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment." *Exhibit 3,* page 11.

54. The Handbook goes on to state "The Church prohibits retaliation against any employee for filing a complaint under this policy or for assisting in a complaint investigation. If you believe there has been a violation of our EEO or retaliation standard, please follow the complaint procedure outlined above." *Exhibit 3,* Page 12-13

55. Seeking a serious response to her concerns over harassing and differential treatment, Ms. Fahrenbruch followed the complaint procedure. She reported the incident to both Robinson, her direct supervisor who is also the Director of Operations and defacto Compliance Officer as the Director of Human Resources, and also to Snyder, the Executive Pastor of Ministries. Additionally, she reported it to members of the Crossroads Leadership Committee. There was no meaningful response to these sincere complaints, which constituted protected activity.

56. Receiving no meaningful internal response, Ms. Fahrenbruch was forced to retain counsel and send a formal complaint to Defendant. Again, this did not trigger an investigation. Rather, it furthered the discrimination, harassment, and retaliation against Ms. Fahrenbruch.

57. Thus, Ms. Fahrenbruch was forced to file her Charge for Discrimination concurrently with the Colorado Civil Rights Division and the Equal Opportunity Commission on September 5, 2019.

58. The campaign of harassment and retaliation culminated in her termination less than a month later.

59. The temporal proximity of this pre-textual employment action, establishes a prima facie case of retaliation.

60. Plaintiff was issued a Notice of Right to Sue from those agencies.  *Please see attached hereto and incorporated herein as* **Exhibit 4.**

### FIRST CLAIM FOR RELIEF
**(Discrimination and Harassment Based on Gender in Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*)**

61. Ms. Fahrenbruch reincorporates each and every paragraph and allegation in this complaint, as if fully set forth in this Claim for Relief.

62. Plaintiff is an "employee" as that term is defined at 42 U.S.C. §2000e(f).

63. Defendant is an employer as that term is defined at 42 U.S.C. §2000e(b).

64. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq ("Title VII") prohibits discrimination based on sex in employment.

65. Based on the above-described acts, practices, and omissions, Defendant engaged in unlawful discrimination under Title VII based on Ms. Fahrenbruch's sex (female).

66. Furthermore, Defendant's illegal actions against Ms. Fahrenbruch, including members of the all male executive team's harassment of Plaintiff were sexual nature and were aimed at Ms. Fahrenbruch because of her gender, resulting in adverse impacts to the terms and

conditions of her employment and further subjecting Ms. Fahrenbruch to harassment and a hostile work environment.

67. Defendant's conduct was sufficiently severe or pervasive that a reasonable person in Ms. Fahrenbruch's position would find her work environment to be hostile or abusive.

68. At the time the above-described conduct occurred, including the continuous harassment of Plaintiff, and as a result of such conduct, Ms. Fahrenbruch believed her work environment was hostile and abusive in nature.  She brought her concerns to Palmer and Robinson and stated that she was scared to be at work.  Instead of again investigating her concerns, Defendant continued to harass, bully, and create a hostile work environment.

69. Defendant knew or should have known of conduct of members of the Executive Team and failed to take prompt , remedial action to stop their conduct.

70. As such, Defendant violated 42 U.S.C. §2000e-2(a) and discriminated by not only subjecting her to sufficiently severe or pervasive harassment but also failing to act and condoning or tolerating such harassment, subjecting her to less favorable terms and conditions of employment by imposing heightened and/or disproportionate discipline on Plaintiff and ultimately terminating her employment.

71. The reasons Defendant submits for terminating her employment are false and pretext for unlawful discrimination.

72. In unlawfully discriminating and retaliating against Ms. Fahrenbruch, Defendant acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Ms. Fahrenbruch's equal rights under law, thereby necessitating the imposition of exemplary damages.

**SECOND CLAIM FOR RELIEF**
(Retaliation in Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*)

73. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

74. Title VII, 42 U.S.C. § 2000e-3(a), states in relevant part that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual, . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter."

75. Plaintiff engaged in activity protected by Title VII on multiple occasions. Specifically, she opposed Defendant's unlawful and discriminatory practices under Title VII by submitting complaints to the Executive Team per the Defendant's Staff Handbook multiple times about members of the Executive Team's harassment and conduct toward her for reporting the same.

76. Plaintiff's opposition and complaints regarding Defendant's illegal practices were protected activities within the meaning of 42 U.S.C. § 2000e, *et seq.*

77. Defendant unlawfully retaliated against Plaintiff in the terms and conditions of her employment and subjected Plaintiff to further harassment because she engaged in the above-described statutorily-protected activities. For example, Defendant, among other things, failed to follow its own policies regarding complaints and discipline. Further, Defendant conducted that Ms. Fahrenbruch should be subject to heightened and/or disproportionate discipline for manufactured conduct. Defendant further failed and refused to take corrective action that would prevent Plaintiff from being subjected to further harassment.

78. A casual connection exists between Plaintiff's protected activities and Defendant's unlawful retaliation.

79. Due to Defendant's retaliatory conduct and refusal to take any corrective action to prevent Plaintiff from being subjected to further harassment, Defendant terminated Plaintiff because she engaged in the aforementioned protected activities.

80. In unlawfully discriminating and retaliating against Plaintiff, Defendant acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Plaintiff's equal rights under law, thereby necessitating the imposition of exemplary damages.

81. As a result of Defendant's retaliatory conduct, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment, and inconvenience and she is entitled to general and special damages, and economic damages including front and back pay. Plaintiff is also entitled to and seeks her attorneys' fees and costs pursuant to 42 U.S.C. §2000e-5(k).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor against Defendant and order the following relief as allowed by law:

1. Compensatory damages, including but not limited to those for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life;
2. Back pay and benefits;
3. Front pay and benefits;
4. Punitive damages;
5. Attorneys' fees and costs of this action as permitted by law;

6. Pre-judgment and post-judgment interest at the highest lawful rate; and

7. Such further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted this 4th day of February, 2021.

**The Advocate Edge, LLC**

*A duly signed copy is on file at the offices of The Advocate Edge, LLC*

By: <u>/s/ Laura S. Tuel</u>
Laura S. Tuel, Esq.
Attorney Registration #40192
The Advocate Edge, LLC
3900 E. Mexico Avenue, Suite 300
Denver, Colorado 80210
laura@theadvocateedge.com
Attorneys for Plaintiff Teri Fahrenbruch